PHILADELPHIA LAMP MANUFACTURING COMPANY, a corporation of the State of Delaware, vs. THE DELAWARE MARINE SUPPLY MANUFACTURING COMPANY, a corporation of the State of Delaware.

**1. BAILMENT—POSSESSION OF PROPERTY—RIGHTS OF BAILEE.**

Where a contract for the manufacture of certain lamp burners for plaintiff provided that plaintiff should deliver to defendant certain necessary tools, dies, etc., to be used in the manufacture of the burners, such contract created a bailment of the property so delivered, carrying with it a right of possession in defendant until the contract was fully performed or terminated.

6

Statement.

2. BAILMENT—TERMINATION—RIGHT OF POSSESSION.

Plaintiff delivered to defendant certain dies, tools, etc., to be used by defendant in the manufacture of certain lamp burners under a contract conferring on defendant the right to the possession thereof during the continuance of the contract. Thereafter plaintiff notified defendant of its election to rescind for defendant's alleged breach of the contract to manufacture, and brought replevin to recover the property. *Held*, that plaintiff's repudiation or rescission of the contract, whether justified or not, terminated defendant's right to possession of the property, and vested in plaintiff the right to immediate possession thereof.

(*March* 30, 1914.)

Judges BOYCE and CONRAD sitting.

*T. Bayard Heisel* and *Charles B. Evans* for plaintiff.

*Charles F. Curley* for defendant.

Superior Court, New Castle County, March Term, 1914.

ACTION OF REPLEVIN (No. 29, September Term, 1913) by the Philadelphia Lamp Manufacturing Company against the Delaware Marine Supply Manufacturing Company to determine the right of possession to certain dies and tools furnished by the plaintiff to the defendant to be used in manufacturing oil lamp burners under a contract which appears in the opinion of the court. The plaintiff subsequently rescinded the contract and replevied the dies and tools which upon giving the usual replevin bond were delivered by the sheriff to the plaintiff. Verdict for plaintiff under binding instructions. Bill of exceptions signed.

See on error, *post*, 95 *Atl*. 235.

At the trial, the plaintiff proved the delivery of the property to the defendant under the contract; the rescission of the contract by the plaintiff; the demand for the return of the property when the contract was rescinded and the refusal by the defendant to return the same; that the property was replevied and delivered to the plaintiff, and then rested.

Counsel for defendant then made proffer of the testimony of certain persons named to show that prior to the date on which the writ of replevin was issued and executed, the defendant had in all respects complied with the contract and that the plaintiff had no legal right or justification to rescind the contract, and that the defendant was entitled to have a return of the property

so that it might proceed with the manufacture of the lamp burn-ers in compliance with the terms of the contract.

Boyce, J.:—We are of the opinion that the testimony prof-fered is unimportant and immaterial, and we rule against its admission.

(Exception was noted, and the defendant closed.)

*Mr. Heisel:*—We ask the court to instruct the jury to bring in a verdict for the plaintiff, and, the goods being in our possession, that they assess our damages at six cents.

Boyce, J., delivering the opinion of the court:

The contract in this case reads:

"This agreement, entered into this twenty-eighth day of September, A. D. one thousand, nine hundred and ten, between the Delaware Marine Supply Manufacturing Company, a cor-poration of the State of Delaware, party of the first part, and the Philadelphia Lamp Manufacturing Company, a corporation of the State of Delaware, party of the second part, witnesseth:

"That for and in consideration of the mutual covenants, promises and agreements to and with each other, the said party of the first part and the said party of the second part, have cove-nanted, promised and agreed, and by these presents doth hereby covenant, promise and agree to and with each other as follows, viz.:

"The said party of the first part covenants, promises, and agrees to and with the said party of the second part, to manu-facture, assemble and complete, one hundred thousand No. 1 Kermont incandescent mantel lamp burners, for kerosene lamps, with materials satisfactory to the said party of the second part, and in perfect condition as to workmanship, at the time of deliv-ery of the same; that each and every of the said burners so manu-factured shall be subject to the inspection of the general manager of the said party of the second part, or other duly designated rep-resentative of the said party of the second part, who shall have the right to reject any burner not found to be in perfect condition as to workmanship and material; to equip and insert in each of said burners a wick to be furnished by the said party of the second

part; to furnish cartons or boxes satisfactory to the said party of the second part and to pack each of said burners in separate cartons or boxes in condition for immediate use; to furnish wooden crates or boxes and to pack said cartons or boxes containing said lamp burners in said wooden crates or boxes in quantities and in a manner satisfactory to the said party of the second part, and to ship the same in accordance with the instructions of the said party of the second part, for the price of thirty-three cents per burner, f. o. b. Wilmington, Delaware.

"And the said party of the first part further covenants, promises and agrees to be responsible for the preservation of all dies, punches, tools and implements turned over or lodged with it by the said party of the second part, for the manufacture of said burners, and to replace any and every of such dies, punches, tools or implements as may be broken or damaged by it, at the cost and expense of the said party of the first part, wear and tear excepted; and for the greater protection of the said party of the second part, the said party of the first part covenants, promises and agrees to cause all of said dies, punches, tools and implements as may be set forth in the receipt for said dies, punches, tools and implements executed by the said party of the first part at the time of delivery of the same, to be insured against loss by fire or other casualty in a reliable insurance company, for the benefit of the said party of the second part, at the equal cost and expense of the said parties hereto.

" And the said party of the first part further covenants, promises and agrees to begin the manufacturing of the said burners on or before the fifteenth day of October, A. D. 1910, and to complete ready for delivery to the said party of the second part or to its order, said burners in perfect condition, in lots of ten thousand, or less upon request of the said party of the second part, within thirty working days from the said date, and the balance of said one hundred thousand burners shall be manufactured and completed, ready for delivery to said party of the second part, at the rate of five hundred burners per working day, until such time as said order for one hundred thousand burners shall be

completed in perfect condition and ready for delivery to the said party of the second part.

"And the said party of the first part further covenants, promises and agrees to report to the said party of the second part for each and every burner manufactured by it, whether perfect or imperfect, and it is understood that none of the said burners, whether perfect or imperfect, are to be reserved or sold by the said party of the first part without permission in writing by the said party of the second part, except as herein otherwise provided.

"The said party of the second part covenants, promises and agrees to deliver to the said party of the first part all necessary tools, set forth in the schedule hereto attached for the manufacturing and assembling of said burners, upon request, and to pay to the said party of the first part, the sum of thirty-three cents cash for each and every burner delivered to it or to its order in perfect condition as aforesaid upon the receipt of bill of lading for such shipment.

"The said party of the second part further covenants, promises and agrees to deposit in the hands of a trustee to be mutually agreed upon by the parties hereto, the sum of one thousand dollars, immediately following the execution of this contract by the said party of the first part, as a guarantee on the part of the said party of the second part for the faithful performance of its contract, with the said party of the first part as herein set forth and provided.

"The terms of which trust shall be as follows:

"That the said trustee shall pay over to the said party of the first part, the said one thousand dollars for the purpose and in the manner following, viz.:

"An amount equal to ten per cent. of each and every shipment of burners by the said party of the first part, to the said party of the second part, or to its order, at the price of thirty-three cents per burner, upon the submission of bill of lading for the sum, until such time as the whole sum of one thousand dollars shall have been paid over to the said party of the first part.

"It is mutually understood and agreed between the said

parties hereto that the said party of the second part shall be credited by the said party of the first part with the said ten per cent. of the amount due for each and every shipment of burners authorized to be paid to the said party of the first part, by the said trustee, on the total amount due for said shipment, so that the payment of ninety per cent. of the contract price for said burners shall be in full liquidation of said debt for each and every of said shipments until such time as the said one thousand dollars, deposited in the hands of the said trustee, shall have been paid out to the said party of the first part, and thereafter said party of the second part shall pay all invoices for burners cash against bill of lading at the said contract price of thirty-three cents per burner.

"It is further mutually agreed between the said parties hereto that in case of failure of the said party of the second part to carry out its contract with the said party of the first part, as herein set forth in taking over and paying for such burners as the said party of the first part shall have manufactured in perfect condition as to workmanship and materials used, for it under this contract, said party of the first part shall have the right to sell such burners or any part thereof for the account of the said party of the second part and apply such parts of the proceeds of the sale as may be necessary to pay the expenses of sale and the balance due under this contract for the manufacture of such burners as may be completed and ready for delivery, at the expiration of five days from date upon which such payment is due, any balance, however, remaining in the hands of the said party of the first part from such proceeds of sale shall be paid and turned over to the said party of the second part, together with the balance of the burners unsold remaining in the hands of the said party of the first part.

"It is further mutually agreed between the said parties hereto that no charge whatsoever shall be made or entered up against the said party of the second part for said lamp burners so manufactured which are rejected by the said party of the second part or otherwise not found to be in perfect condition as to workmanship and materials used.

"Provided further that the general manager of said party of the second part shall have the right to destroy and reduce to junk all burners rejected by him as imperfect.

"It is further mutually understood and agreed between the said parties hereto, that the general manager of the said party of the second part, or other expert designated by the said party of the second part, shall have the right to enter the plant of the said party of the first part and to designate such improvements in the art of manufacturing of said burners as will lessen the cost thereof, which said saving in the said cost of manufacture shall inure to the benefit of the said party of the second part in the reduction of the price to be paid therefor.

"In witness whereof, the said party of the first part and the said party of the second part have respectively caused this agreement to be executed by their respective presidents, attested by their respective secretaries, and sealed with the corporate seal of the respective corporations, the same having been duly authorized by the respective board of directors of each of said parties. Delaware Marine Supply Manufacturing Company, by James J. English, President. Attest: Geo. W. Pierson, Secretary. [Seal.] Witness: Martin E. Smith. Philadelphia Lamp Manufacturing Company, by Louis F. Kraemer, President. Attest: Frank Hall, Secretary. [Seal.] Witness: Robt. W. Montgomery."

[1] One of the results of the contract between the parties was to create a bailment of the property in question. Upon the delivery of the property to the defendant the latter acquired a special property therein which carried with it a right of possession until the contract was fully performed or terminated. And until the completion or termination of the contract the plaintiff did not have a right of possession of the property. After the property had been delivered to the defendant, and after one or more deliveries of the lamp burners had been made, the plaintiff sent the following letter to the defendant:

"Philadelphia, Pa., May 16, 1911.

"The Delaware Marine Supply Mfg. Co., Concord Pike, Wilmington, Del.

"Gentlemen:—Referring to our contract with your company,

by which you were to make, of proper efficiency, quantities of lamps as set out in the contract and in accordance with our correspondence.

"We greatly regret that you have utterly failed either to make the lamps properly or to deliver them within the time agreed upon.  Having given you repeated notices of what we would be obliged to do, and having given you all of the assistance in our power, by resolution of the board of directors of this company, you are notified that the contract has been, and is hereby rescinded, and you will please bring about the return to us, without delay, the balance of the one thousand dollars deposit made under the contract, and all tools and property in your possession belonging to us.

"In our desire to assist you, the suggestion was made by the writer that we might buy from you certain presses and material, but the sum put upon same is so far beyond what would interest us, that the suggestion will have to be dropped.

"Will you kindly acknowledge receipt of this letter, sending us a short form of order upon the Trust Company authorizing it to pay to us the balance of deposit above referred to, and please indicate a time when we may send for the material belonging to us.  Very truly yours, Phila. Lamp Mfg. Co., Henry N. Kerr, Vice-President."

This letter was duly received by the defendant company.

[2]   The effect of this letter was a distinct and unequivocal repudiation or rescission of the contract, and it not only relieved but prevented the defendant from further performance of the contract, leaving the latter to recover whatever damages, if any, it may have suffered.  Whether the rescission of the contract was warranted on the part of the plaintiff is unimportant in this action.  For if the rescission was warranted the right to immediate possession of the property unquestionably passed to the plaintiff, and if the rescission was not warranted the right to the immediate possession of the property passed, in this instance, equally to the plaintiff because the defendant had no lien upon the property and no further right to use it.  In other words, even if the rescission

was unwarranted, the defendant had no right to continue to produce the burners and thus add to its damages.

The purpose of the bailment having been terminated by the rescission, the bailment itself thereupon ended, and the plaintiff's right of possession became immediate.

Gentlemen of the Jury:—For the reasons assigned, we direct you to return a verdict for the plaintiff, which will be for six cents as for nominal damages, besides costs of suit.

Verdict for plaintiff.